CHASEZ, Judge.
This is a suit by the plaintiff, George F. Koury, a stockholder and former officer and director of the defendant corporation, against the defendant, Bonnie-Frances Lingerie Company, Inc., for salary and bonuses alleged to be due him under a written employment contract entered into by the parties. The demand of the plaintiff against the defendant is for the sum of $11,845.79, alleged to be due for the years 1959, 1960, 1961 and 1962.
The defendant corporation, Bonnie-Frances Lingerie Company, Inc., answered and filed a reconventional demand against the plaintiff, alleging that he is indebted to the corporation in the sum of $9,000.00, being the balance due on a certain promissory note dated January 1, 1954, in the principal amount of $25,000.00, payable on or before 90 months after date, bearing interest at the rate of 2% per annum from date, until paid, interest payable semiannually and 10% attorney’s fees; also the sum of $6,422.74 due on an overdraft in plaintiff’s drawing account while in the employ of the defendant.
We believe it should be stated here, for .a proper understanding of this matter, that in 1951 Bonnie-Frances Lingerie Company, •then a sole proprietorship owned by B. F. Coulon, entered into an employment agreement with the plaintiff, setting his compensation at $200.00 per week, plus 10% of the net profits earned in business. Apparently, it was understood between the parties that at some future time the plaintiff, George F. Koury, would acquire an interest in the business and for three years the parties operat- • ed under this agreement satisfactorily. On .December 30, 1953, this company was succeeded by Bonnie-Frances Lingerie Company, Inc., of which corporation plaintiff became a stockholder, a member of the board of directors and held the office of vice-president. He is listed in the charter as a subscriber to 100 shares of the stock of said corporation. On January 1, 1954, a written contract of employment and stock purchase agreement was entered into between the plaintiff, George F. Koury, and the defendant corporation. Under this agreement plaintiff purchased 250 shares of the stock of the corporation at par value of $100.00 per share. As consideration for said stock he executed a promissory note payable 90 months after date for $25,000.00, bearing interest at the rate of 2% per annum, payable semi-annually, and the said 250 shares of stock so purchased by plaintiff were endorsed by him and pledged to secure payment of the note.
Pertinent parts of this agreement considered to be at issue herein, read as follows :
“2. As and when received by Koury, there shall be applied to the principal of said note:
“(a) Not less than one-half (14) of all payments of salary and/or bonus paid to Koury during each calendar year over and above Fifteen Thousand ($15,000.00) Dollars.
“(b) Not less than one-half (J4) of any and all cash dividends declared and paid on the stock pledged to secure the payment of said note.
“Any and all stock dividends declared and paid on the stock pledged to secure the payment of said note shall be added to the pledge as additional security for said note, and said Koury binds and obligates himself to endorse with blank power of attorney each certificate of stock issued in the name of Koury, and in default thereof said Koury hereby authorized Bryan F. Coulon and/or Cuyler H. Coulon to endorse such certificate or certificates in his name.”
*374 The agreement also provided that the plaintiff had the right to withdraw from the pledge a certificate for twenty-five shares upon the payment of $2,500.00.
The agreement likewise provided that the plaintiff had an option to purchase 750 additional shares of stock of the corporation.
Section 7 of this agreement, providing that plaintiff was assured of bonuses over and above his salary, reads as follows:
“Corporation has established, by appropriate resolution of its Board of Directors, a policy of increasing the remuneration of its present three (3) principal employees by the payment of bonuses as follows:
“(a) The present salaries of the said three (3) principal employees being now based on net annual sales of One Million ($1,000,000.00) Dollars, each of said employees shall be entitled to bonuses for an increase in the net annual sales as follows:
“I. When the net annual sales are over One Million ($1,000,000.00) Dollars, but not over One Million Five Hundred Thousand ($1,500,000.00) Dollars, a bonus of Two Thousand Five Hundred ($2,500.00) Dollars to each of said employees.
“II. When the net annual sales are over One Million Five Hundred Thousand ($1,500,000.00) Dollars an additional bonus of one (1% per cent, of the net annual sales over One Million Five Hundred Thousand ($1,500,000.00) Dollars to each of said employees.
“(b) The three (3) ‘principal employees’ referred to are:
Bryan F. Coulon, President.
George F. Koury, Vice-President and Production Manager.
Cuyler H. Coulon, Secretary-Treasurer.
“(c) This method of fixing the proper annual bonuses for such employees shall continue from year to year, but shall be applicable only to such of said three (3) employees as are, at the end of each year, in the employ of Corporation and in the active performance of their respective duties.”
In May of 1954, the agreement was amended to add, among other things, sub-section (d) to Article 7:
“Nothing herein provided shall restrict the Bonnie-Frances Lingerie Company, Inc. by appropriate resolution of its Board of Directors from increasing the remuneration of its present three (3) principal employees in its discretion as long as said increases are over the mínimums provided in this paragraph.”
The agreement also provides in Section 8:
“Nothing in this contract is to be construed as constituting an employment of any of said employees except from year to year.”
Article 12 of the agreement provides:
“This agreement constitutes a full and complete compliance with, and discharge from, any and all written or verbal agreements or understandings heretofore had or claimed to have been had, between B. F. Coulon, individually or as the owner of, or on behalf of, Bonnie-Frances Lingerie Company and/or Bonnie Frances Lingerie Company, Inc., on the one hand, and George F. Koury on the other, and said Koury hereby disclaims any further claim or demand of any kind whatsoever against said B. F. Coulon and/or Bonnie-Frances Lingerie Company and/or Bonnie-Frances Lingerie Company, Inc., pertaining to his employment by, or association with, any of the said parties, as to any interest, share or participation in the profits of said business.”
The above section of the agreement had the effect of superseding the 1951 employment contract between B. F. Coulon, individually, and the plaintiff.
*375 In July of 1954, a special meeting of the board of directors was held whereby the salaries of the principal officers of the company, including plaintiff, were set at $12,000.00 per year. The method of computing bonuses payable to officers was changed. The bonuses were to be paid out of a fund realized from 8% of the sales of the corporation less any commission paid to sales people and any irrecoverable advances made to salesmen; the residue was to be divided share and share alike among the 3 principal officers of the company. This arrangement was obviously satisfactory to all parties and increased their compensation. Mr. Koury’s compensation specifically was increased over the minimum provided in the agreement of January 1, 1954.
In January, 1960, a special meeting of the board of directors was held. The minutes reflect that all members of the board were present or represented by proxy. A motion was made that the incentive bonuses for the year 1959 be cancelled due to the disappointing profits in 1959 and the general unfavorable financial condition of the corporation. This motion was unanimously carried. The record reflects that bonuses were not paid for the year 1959 and the years of 1960, 1961 and 1962, for the same reason.
On October 2, 1961, plaintiff was called to active duty by the Naval Reserve and was on active duty until August, 1962. During the period of time while Mr. Kou-ry was in service he performed duties for Bonnie-Frances Lingerie Company, Inc. Fie was paid during this year three-quarters of his salary, or $9,000.00. Upon his return from the service, Mr. Koury returned to his full employment at Bonnie-Frances Lingerie Company, Inc., and received full salary. He avers he found his job duties substantially changed and that the structure of the company had undergone revision.
The record reflects that Mr. Koury’s tour of active duty created animosity between the president of the company, B. F. Coulon, and himself. During his time of service certain changes had been made and by mutual consent certain agreements by which Mr. Koury was to get control of the company on the contingency of Mr. Coulon’s death were mutually abrogated. Mr. Koury was also allowed to withdraw an option he had exercised to purchase more stock of the corporation by mutual consent of the corporation and Mr. Koury. In September of 1962, Mr. Koury made certain demands on the corporation for consideration of his continued employment by the corporation. These were not entertained by the corporation. On the 28th day of September, 1962, Mr. Koury submitted his resignation as vice-president of the defendant corporation, effective October 1, 1962.
The court a qua rendered judgment on the 22nd day of June, 1964, in favor of the defendant, Bonnie-Frances Lingerie Company, Inc., and against the plaintiff, George F. Koury, dismissing the principal demand of the plaintiff, holding in its reasons for judgment that the payment of bonuses under the agreement between the parties was predicated upon a fallacious concept of what constitutes a valid fund or reserve account out of which bonuses might legally be paid, and as such is illegal and void; and that, therefore, the plaintiff was not entitled to a judgment for any sums whatever.
The court likewise rendered a judgment in favor of George F. Koury, defendant in reconvention, and against Bonnie-Frances Lingerie Company, Inc., plaintiff in recon-vention, dismissing the demand of said corporation for the balance of $9,000.00, interest and attorney’s fees, claimed on the promissory note drawn by George F. Koury on January 1, 1954, holding in its reasons therefor that under the agreement between the parties said note was to be paid out of earnings, salary and bonuses to be received by Mr. Koury, an employee of the corporation, and that when Mr. Koury ceased to be so employed a failure of consideration occurred rendering unenforceable the balance of the note as the means of payment no *376 longer was available to obligor. It further rendered a judgment in favor of the Bonnie-Frances Lingerie Company, Inc., and against Mr. Koury rescinding the sale of 90 shares of the capital stock of said corporation to Mr. Koury and for which the said corporation has not received payment. Finally, the court rendered a judgment in favor of Bonnie-Frances Lingerie Company, Inc., plaintiff in reconvention and against George F. Koury, defendant in reconvention, in the sum of $6,422.74, due to the corporation on account of overdraft in defendant’s drawing account, with 5% per annum interest from judicial demand until paid; and decreed that each party was to bear their own costs of the proceedings.
From the foregoing judgment the plaintiff, George F. Koury, appealed suspensively and devolutively, on August 28, 1964. On October 30, 1964, defendant and plaintiff in reconvention, Bonnie-Frances Lingerie Company, Inc., answered the appeal, praying that the judgment be reversed insofar as it denied recovery on the promissory note and insofar as it rescinded the contract of sale of the remaining 90 shares of capital stock but otherwise affirmed.
Based on the above stated facts and judgment of the court, we shall discuss the issues of this case separately:
MAIN DEMAND' BY PLAINTIFF FOR UNPAID BONUSES
Plaintiff predicates his demand for bonuses on the employment contracts of 1951 and 1954. At the outset we must state that it is our opinion that Article 12 of above quoted contract of 1954 superseded all of the provisions and terms of the 1951 employment contract. Thus if Mr. Koury has any right for salary or bonuses under his employment contract it would have to be under the 1954 agreement. The 1954 agreement provided that when the sales were over One Million Dollars and under One Million Five Hundred Thousand Dollars a bonus of $2,500.00 would be paid to plaintiff. When sales were over One Million Five Hundred Thousand Dollars an additional bonus of 1% of the sales over One Million Five Hundred Thousand Dollars would be paid. The bonus would be paid to employees remaining in the employ of the company at the end of the year in which it would be due. The amendment of May, 1954, provided that the clause setting the bonuses would not restrict the corporation by resolution of the board of directors from increasing the remuneration of its 4 principal employees. The resolution of July, 1954, changed the method of computation of the bonuses but each year the amount of bonuses paid to plaintiff was above the minimum provided in the January, 1954, agreement. We take this resolution as an exercise of the right granted under Article 7, Section (d) of the agreement adopted on May 1954, and not contrary to it; thus the bonuses were to be computed as per the resolution of July, 1954, but not to fall below the minimum bonuses provided in the January, 1954 agreement and in our opinion were not illegal in any respect. The bonuses were paid through the year 1958. In the year 1959, by resolution of the board of directors, it was cancelled. The question, therefore, is did this cancellation affect Mr. Koury’s right to the bonus under the 1954 employment contract? Mr. Koury contends that he was not present at this board meeting. However, after a review of the record, we are of the opinion that he was present and did participate in the passage of the resolution. Because of this participation we hold that he waived the 1959 bonus and is now estopped from claiming it under his 1954 employment contract. As to the years 1960 and 1961, we believe that plaintiff’s rights were vested under the 1954 employment contract and since he did not waive them he is entitled to recover the amounts due under the contract for these years. The record reflects that in the year 1960 the corporation had net sales of $1,456,782.00; in 1961 the net sales were $1,470,496.00. Using the criteria set forth in the January 1954 contract, the plaintiff is entitled to a bonus of $2,500.00 for each year. He is thus entitled to re *377 cover the sum of $5,000.00 as past due bonuses. In the year 1962, since Mr. Koury was not in the employ of the company at the close of the year, having resigned as of October 1,1962, he is not entitled to a bonus under the terms of the contract.
RECONVENTIONAL DEMAND BASED ON THE PROMISSORY NOTE
As set out heretofore, Koury purchased 250 shares of the corporation stock at $100.00 per share. In consideration he gave his promissory note for $25,000.00 and the pledge of the shares purchased. The record reflects that thereafter payments of $16,000.00 were made by him and 5 certificates of 25 shares each were released from the pledge. The corporation now endeavors to collect $9,000.00 which it contends is due and owing since January 1, 1963, plus 2% interest and 10% attorney’s fees.
Plaintiff contends that there was failure of consideration and he does not owe the $9,000.00. He contends that the consideration for the note was also the execution of the full terms of the 1954 contract; since the bonuses were not paid for the years 1959, 1960, 1961 and 1962, he contends that the consideration has failed. We believe that this argument is without merit because the consideration for the purchase of the stock was the note. While it is true that the note contains a provision subjecting it to the agreement of January, 1954, we think that it only incorporates the provisions relating to payment of the note and the pledge agreement.
Plaintiff urges that the note is to be liquidated exclusively out of one-half of the funds he receives as salary, bonus and/or dividends which is in excess of $15,000.00 in any calendar year. This contention is without merit for the agreement quoted supra provides that not less than such amount so received is to be applied to the principal of the note. A reasonable interpretation of the agreement impels the conclusion that it intends this to be the minimum amount plaintiff is required to pay on the note; it in no way controls the maximum payments he is required to make, nor does it limit the payment of the note to funds earned as an officer, employee or stockholder of the corporation. Hence, all of his effects are liable for this obligation. Since the note has matured and plaintiff is liable therefor, judgment shall be entered for the defendant and plaintiff in reconvention in the sum of $9,000.00, plus 2% interest from January 1, 1963, until paid, and attorney’s fees; the pledge of stock certificates 21, 22, 23 and 24, each for 25 shares, of Bonnie-Frances Lingerie Company, Inc., is recognized as security for the note.
RECONVENTIONAL DEMAND ON DRAWING ACCOUNT
Defendant claims that plaintiff has overdrawn his drawing account in the sum of $6,422.74. Plaintiff does not deny that his drawing account is overdrawn but contends that it was not properly credited during the period that he was on active duty in the service. He contends that the corporation promised to pay him his full salary of $3,000.00 per quarter during the period but only credited it with $1,500.00 for each of the second and third quarters of 1962. Mr. B. F. Coulon testified that he had promised to pay plaintiff only one-half of his salary during his military service, but since Mr. Koury was available more frequently than anticipated and his services were beneficial to the company during the first quarter, he gave him the full amount of his salary. We are of the opinion that the better view of the evidence is that the corporation agreed to pay plaintiff one-half of his salary and that he was amply compensated for the time he devoted to the corporation while in the service. Further we do not believe that Mr. Koury bore the burden of proof required of him to establish his contentions. Therefore, we believe that judgment on the open account should be affirmed.
*378 Plaintiff argues in his brief that he was deprived of rights under the provisions of the Universal Military Training and Service Act, 50 U.S.C.A. § 459(g) (3). This statute requires that returning service men be restored to their former position or position of like seniority status and pay and that the employee cannot be discharged for a period of six months. Mr. Koury argues that the animosity he encountered on his return from service forced him to resign and this should have the same effect as if he had been fired. We see no merit in this contention. On his return from service plaintiff continued in the employ of the corporation and acted as a director and officer of the corporation at the same salary and he voluntarily terminated his employment with Bonnie-Frances Lingerie Company, Inc., and we can not, under these circumstances, impute any fault to Bonnie-Frances Lingerie Company, Inc.
On May 12, 1962, Mr. Koury wrote a letter to Mr. B. F. Coulon, in which he stated:
“I made a superficial inspection of the records I brought back from N.O. and it seems the girls made a mistake in my drawing a/c. The amount credited me for the first quarter does not conform with the amount you told me would be credited. I am sure this was just carelessness on their part.”
On May 16, 1962, Mr. B. F. Coulon wrote to Mr. Koury, in which he stated:
“I was also disturbed to learn from Spencer that you appeared to be uncertain whether you would return to Civil life or continue in service at the expiration of the present emergency period. I feel, if you felt that way at this late date, while we were led to understand all along that you were only in service for the emergency period, the least you could have done was to inform me of such uncertainty in your future plans so that we could start looking around for help — temporary or otherwise. To make a long story short, we cannot continue to ‘mark time’ and must start marching soon or we will fade out of the picture.”
On May 22, among other things, Koury wrote to Coulon in which he stated:
“Thirdly about my remaining on active duty: As a matter of interest I found this past year to be just what the doctor ordered. After eleven years of back-breaking and pressure-prone effort I was on the verge of a nervous and physical collapse. I was just bragging a little to SL when I told him that I was offered a major command. I should know better. Everytime I tell him anything he distorts the item and twists it so that it suits his purposes. I think the best thing for me to do is to forget that he exists and completely ignore him I’d be so much better off. As of now I intend to leave the Navy August 1-15. Please feel free to do anything you so desire if you wish to hire someone else go ahead and suit yourself and I will try to make other arrangements for myself and see what we will do when I return.”
On June 11, 1962, Coulon wrote to Koury, as follows:
“As to the future, and to give you the advance notice that I feel I should have received from you, here is a skeleton of our future plans of operation:

“SCHEDULE

“1. By pre-arranged schedule we will get in and out of the season much sooner than we have heretofore.

“SALES

“2. Spencer Lazarus will continue in charge of sales under a different working arrangement, his compensation to be based on commission and with a specific territory, if necessary to get results. This *379 will be decided between now and the end of the year.

“MERCHANDISING

“3. George Koury — in charge working exclusively in New Orleans, devoting his entire time to designing, market research, working the New York market season and with the chain stores, etc.

“GENERAL MANAGER

“4. B. F. Coulon, directly in charge of production of both in Picayune and New Orleans — Coordination and administration, etc.
“As soon as I have an opportunity will write up the procedure of all of these categories, and will give and expect full cooperation from both you and Spencer.
“George I might as well tell you right here and now that I am so ‘hellbent’ on straightening out this business and putting it on a profit paying basis that will justify our efforts, that I have definitely decided to make it work, if not to liquidate, and if either you or Spencer cannot or do not want to join me in this effort please let me know so I can look for replacements. I assure you this is the last thing I would want to do, but I have no choice since this is a last ditch fight.
“Regards
“Sincerely,
“/s/ B. F.
“B. F. Coulon”
On April 8, 1962, Koury wrote to Coulon, as follows:
“Dear B. F.
“Our telephone conversation left me somewhat depressed. This should be the peak of our accounts receivable and it normally should permit us as in the past to squeek by our expected depressed next three months. If you are sweating for funds now the next quarter will be almost impossible.
“I fully realize that your intentions as well as mine have always been the salvation of Bonnie Frances. I have been made aware that the insurance premiums have become a drain on the company’s finances and liquid position and I am willing because of this awareness to see our agreement nullified provided all policies therein are cancelled by mutual agreement. Certainly all premiums are a drain on the company fund and its present status. If the policies can be so cancelled I would appreciate the receipt of ownership of the one you hold on my life as I will turn over ownership of the one I hold on your life to you. The entire agreement we have together and with Bonnie Frances to be voided by mutual consent.
“I have been devoting all of my spare time to and in behalf of Bonnie Frances. I feel that this is the time for drastic action. Picayune has been a large drain and it is apparent that conditions have not bettered. Therefore I propose that immediate action be taken to reduce the operation at Bonnie Frances — retrench to the N. O. Plant and attempt to operate a business of $600,000 — $750,000 annually profitably. All the frosting on the cake must be scrubbed and only profitable items produced in a smaller line. Unless this is accomplished it will be impossible to meet obligations after the pre-back-to-school lull.
“The agreement I have with Bonnie Frances has always been very important to me but survival of the company is more paramount. When I return and I hope the time is not in the too distant future, we can sit down and solve this problem of a method to accomplish a mutual good, you for security of your estate and me for motivation to continue to push for Bonnie Frances.
*380 “I have thought over very carefully the option you gave me of issuing the $75,000-stock or cancelling my execution sent to you about eighteen months ago. Inasmuch as the insurance deal is falling through, the execution of this option offers no attraction and I accept your offer to cancel it along with the insurance by mutual consent.
“This condition I hope is just a temporary situation and that we can salvage Bonnie Frances. I’m sure when I return we will be able to reach a mutually satisfactory agreement. Until that time be assured that I will do everything in my power to aid and assist you whenever and however I am able.
“Please convey my very best to Mrs. Coulon.
“Regards—
7s/ George”
Thus Mr. Koury was kept informed of the corporation’s affairs.
On September 24, 1962, an inter-company memorandum was sent to Mr. Koury by Mr. Coulon, reading as follows:
“We acknowledge receipt of your typewritten memo covering the five points of demands and adjustments which you outlined verbally in the presence of Mr. Mark Seirsdale on September 14 in the Company’s office, Picayune, Mississippi, pertaining to your association with this Company.
“This memo does not appear authentic in that it cannot be identified with you because it does not bear your signature — not even dated — .
“Consequently it is impossible to malee an intelligent presentation, to the parties concerned, of any demands or adjustments you seek. Please therefore, if you wish to' pursue the matter further let us have a revised memo, properly identified, covering in detail, the points outlined.”
This was in response to the demands made by Mr. Koury on Mr. Coulon and the corporation, which read as follows:
“1. Present salary to be equal to the receipts from Bonnie Frances by the Coulon family. At present rate of sales $1,500.00 per month with escalator clause for increase with increased sales.
“2. The building at 2005 Gentilly B’lvd to be purchased from the corporation by B. F. Coulon at book value and paid for in Bonnie Frances stock at asset value at close of business 31 Dec., 1962.
“3. Portion of the corporation’s profits irrevocably dedicated to the payment of dividends to stockholders.
“4. Receipt of voting rights of equal portion of stock as held by coulon family with dividend rights on same — purchase of which to be made through the medium of dividends received.
“5. Provision for the retirement of Coulon family with reciprocal arrangements at the demise of either party.”
A few days after these communications between the parties, Koury submitted his resignation and, as hereinabove stated, we cannot hold that this resignation was constrained because of the ill treatment of Koury by the corporation or its officers.
For the reasons assigned, it is ordered, adjudged and decreed:
(1) That the judgment appealed from insofar as it rejects plaintiff’s main demand and also insofar as it dismisses defendant’s reconventional demand for the balance due on the promissory note be and the same is reversed.
(2) That the judgment be amended so as to provide that plaintiff have judgment against defendant on his main demand for the sum of $5,000.00 with legal interest from judicial demand until paid.
*381 (3) That the judgment be further amended so as to provide that defendant have judgment against plaintiff on the reconventional demand for the balance due on the promissory note, to-wit: $9,000.00 plus 2% interest per annum from January 1, 1963, until paid together with 10% attorney’s fees, and defendant’s rights as pledgee of the stock certificates attached to the note under the agreement between the parties be and the same are fully recognized and confirmed.
(4) That the judgment appealed from as above amended, and in all other respects, be and the same is hereby affirmed.
Costs of this appeal are to be paid by plaintiff, George F. Koury.
Reversed in part, amended and affirmed.